**PUBLISHED**

FILED: September 22, 2020

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1952**
**(4:15-cv-00054-AWA-RJK)**

GAVIN GRIMM,

Plaintiff – Appellee,

v.

GLOUCESTER COUNTY SCHOOL BOARD,

Defendant – Appellant.

------------------------------

NAACP LEGAL DEFENSE AND EDUCATION FUND, INC.; INTERACT: ADVOCATES FOR INTERSEX YOUTH; FAIRFAX COUNTY SCHOOL BOARD; ALEXANDRIA CITY SCHOOL BOARD; ARLINGTON SCHOOL BOARD; FALLS CHURCH CITY SCHOOL BOARD; TREVOR PROJECT; NATIONAL PARENT TEACHER ASSOCIATION; GLSEN; AMERICAN SCHOOL COUNSELOR ASSOCIATION; NATIONAL ASSOCIATION OF SCHOOL PSYCHOLOGISTS; PFLAG, INC.; TRANS YOUTH EQUALITY FOUNDATION; GENDER SPECTRUM; GENDER DIVERSITY; CAMPAIGN FOR SOUTHERN EQUALITY; HE SHE ZE AND WE; SIDE BY SIDE; GENDER BENDERS; AMERICAN ACADEMY OF PEDIATRICS; AMERICAN ACADEMY OF CHILD AND ADOLESCENT PSYCHIATRY; AMERICAN ACADEMY OF PHYSICIAN ASSISTANTS; AMERICAN COLLEGE OF PHYSICIANS; AMERICAN MEDICAL ASSOCIATION; AMERICAN MEDICAL STUDENTS ASSOCIATION; AMERICAN MEDICAL WOMEN'S ASSOCIATION; AMERICAN NURSES ASSOCIATION; AMERICAN PSYCHIATRIC ASSOCIATION; AMERICAN PUBLIC HEALTH ASSOCIATION; ASSOCIATION OF MEDICAL SCHOOL PEDIATRIC DEPARTMENT CHAIRS; GLMA: HEALTH PROFESSIONALS ADVANCING LGBT EQUALITY; LBGT PA CAUCUS; PEDIATRIC ENDOCRINE SOCIETY;

SOCIETY FOR ADOLESCENT HEALTH AND MEDICINE; SOCIETY FOR PHYSICIAN ASSISTANTS IN PEDIATRICS; WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH; LEAH FREGULIA; ADELITA GRIJALVA; DAVID VANNASDALL, Ed.D.; LOS ANGELES UNIFIED SCHOOL DISTRICT; JUDY CHIASSON, Ph. D.; MONICA GARCIA; WENDY RANCK-BUHR, Ph. D.; SAN DIEGO UNIFIED SCHOOL DISTRICT; ELDRIDGE GREER, Ph. D.; GREGORY R. MEECE; FRANKLIN NEWTON, Ed.D.; DIANA K. BRUCE; DANIEL F. GOHL; DENISE PALAZZO; JEREMY MAJESKI; KAREN CARNEY; SARAH SHIRK; BETH BAZER, Ed.D.; PAULA INSLEY MILLER, Ed.D.; THOMAS WEBER; THOMAS A. ABERLI, Ed.D.; HOWARD COLTER; MATTHEW HANEY; KEN KUNIN; ROBERT A. MOTLEY; CATHERINE FROM; ROGER BOURGEOIS; CYNDY TAYMORE; LIZBETH DESELM; DYLAN PAULY; DELOIS COOKE SPRYSZAK; CRAIG MCCALLA; MARY DORAN; WASHOE COUNTY SCHOOL DISTRICT; JAMES C. MORSE, SR., Ed.D.; THE SCHOOL DISTRICT OF SOUTH ORANGE AND MAPLEWOOD; THOMAS SMITH, Ed.D.; CRAIG VAUGHN; ARTHUR DIBENEDETTO; LAS CRUCES PUBLIC SCHOOLS; WENDI MILLER-TOMLINSON, M.D., Ph.D.; JOHN O'REILLY; HEIDI CARTER; ANTHONY GATTO; ERIC DOSS; PEYTON CHAPMAN; ZIAD W. MUNSON, Ph. D.; RACHEL SANTA, Ed.D.; KELLIE M. HARGIS, Ed.D.; LINDSEY POLLOCK, Ed.D.; BRIAN SCHAFFER; THE WASHINGTON CENTRAL UNIFIED UNION SCHOOL DISTRICT; WILL BAKER; LISA LOVE; SHERIE HOHS; SHERRI CYRA; LAURA H. LOVE, Ed.D.; JILL GURTNER; MONICA SCHOMMER; BRYAN DAVIS, Ph. D.; PARU SHAH, Ph. D.; TIM KENNEY; STATE OF NEW YORK; STATE OF WASHINGTON; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NORTH CAROLINA; STATE OF OREGON; COMMONWEALTH OF PENNSYLVANIA; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; DISTRICT OF COLUMBIA,

Amici Supporting Appellee.

---

O R D E R

---

2

The petition for rehearing en banc filed by the appellant was circulated to the full court. No judge requested a poll under Fed. R. App. P. 35. The court denies the petition for rehearing en banc. Judge Niemeyer and Judge Wynn submitted statements concurring in the denial of rehearing en banc. These statements are attached to this order.

Entered at the direction of Judge Floyd.

For the Court

/s/ Patricia S. Connor, Clerk

NIEMEYER, Circuit Judge, concurring in the denial of rehearing en banc:

Under every applicable criterion, this case merits an en banc rehearing. Yet, I concur in denying the Gloucester County School Board's motion for such rehearing. Earlier in these proceedings, this court ruled against the School Board, and the Supreme Court granted its petition for a writ of certiorari, ultimately vacating our opinion on procedural grounds. There is no reason to conclude that this court, even though en banc, will change its mind — now expressed in two opinions. It would, I believe, be the more efficient course for the School Board again to file a petition for certiorari in the Supreme Court with the hope that the Court will again be interested in granting it. The issues in this case certainly merit its doing so.

Gavin Grimm, a transgender male, commenced this action against the School Board in 2015 while he was a student attending Gloucester High School in Virginia to require the school to permit him to use its male restrooms. The High School provided male restrooms and female restrooms and, under school policy, "limited [those restrooms] to the corresponding biological genders." It also provided unisex restrooms and made them available to everyone, with the particular goal of accommodating transgender students. In doing so, it recognized that all individuals possess a privacy interest in using restrooms or other spaces in which they remove clothes and engage in personal hygiene and that this privacy interest is only heightened when persons of the opposite sex are present. The School Board's policy was thus consistent with the Supreme Court's observation that the "[p]hysical differences between men and women" are "enduring" and render "the two sexes . . . not fungible," and its recognition, in ordering an all-male college to admit

4

females, that such a remedy "would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex." *United States v. Virginia*, 518 U.S. 515, 533, 550 n.19 (1996) (cleaned up).

In his complaint, Grimm nonetheless contended that the School Board's policy discriminated against him "based on his gender," in violation of the Equal Protection Clause of the Fourteenth Amendment, and "on the basis of sex," in violation of Title IX. Grimm has acknowledged that the School Board can, consistent with Title IX and the Equal Protection Clause, establish one set of restrooms for its male students and another set for its female students. But he sought injunctive relief requiring the High School "to allow [him] to use the boys' restrooms at school."

The district court granted summary judgment to Grimm, holding that the School Board violated Grimm's statutory and constitutional rights by not allowing him to use the male restrooms, and this court has now affirmed the district court. In doing so, however, it failed to apply Title IX and its regulations, as well as established principles under the Equal Protection Clause. While Title IX prohibits discrimination "on the basis of sex" in the provision of educational benefits, 20 U.S.C. § 1681(a), it expressly allows schools to provide "separate living facilities for the different sexes," *id.* § 1686, including "toilet, locker room, and shower facilities," 34 C.F.R. § 106.33. And the Equal Protection Clause requires only that "all persons *similarly situated* should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (emphasis added). The Clause thus "simply keeps governmental decisionmakers from treating differently persons *who are in all relevant respects alike*." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (emphasis added).

5

But Grimm is not similarly situated to the students using the High School's male restrooms. Grimm was born a biological female and identifies as male, and thus his circumstances are different from the circumstances of students who were born as biological males. Moreover, such anatomical differences are at the root of why restrooms are generally separated on the basis of sex. There is also no evidence in the record that Grimm was treated any differently from any other transgender student, nor does he make such a claim.

In stepping past these applicable legal principles, this court's opinion simply advances policy preferences, which, of course, are for Congress to define, not our court.

For the reasons given in my dissenting opinion, I conclude that the School Board fully complied with the requirements of Title IX and the Equal Protection Clause in offering its students male and female restrooms, separating them on the basis of sex, and also providing safe and private unisex restrooms that Grimm, along with all other students, could use.

At this point, though, the Gloucester County School Board should again present this matter to the Supreme Court, with the hope that the effort will again bear fruit.

WYNN, Circuit Judge, concurring in the denial of rehearing en banc:

I join my good colleague Judge Niemeyer in the wise decision to concur in the denial of an en banc rehearing.

The School Board's petition for rehearing is without merit. Though the question presented by this case is no doubt one of substantial importance, the panel opinion aligns with other circuits' authority. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 968 F.3d 1286 (11th Cir. 2020); *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017); *see also Parents for Priv. v. Barr*, 949 F.3d 1210 (9th Cir. 2020) (rejecting cisgender students' privacy-related challenges to sharing bathrooms with transgender students of the opposite sex-assigned-at-birth); *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) (same). As stated in Judge Floyd's thorough majority opinion, the School Board violated both Title IX and the Equal Protection Clause by prohibiting Grimm from using the boys' bathrooms at school and also by refusing to amend his school records to accurately reflect his gender.

Thus, the district court correctly granted summary judgment to Grimm as to his Equal Protection claim. The Supreme Court has held that a state action violates the Equal Protection Clause when it creates "arbitrary or irrational" distinctions between similarly situated classes of people out of "a bare . . . desire to harm a politically unpopular group." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446–47 (1985) (alteration in original) (quoting *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)). Yet this is precisely what the Board has done here by first creating and then repeatedly altering the challenged bathroom policy for the sole purpose of prohibiting one transgender student

7

who identified and physically presented himself as male from affirming his gender by using the boys' bathroom at school. Under our Equal Protection jurisprudence, heightened scrutiny must be applied to Grimm's claim. This is because the bathroom policy, which determines which bathroom a student must use based on the sex listed on that student's birth certificate, necessarily rests on sex-based classifications; and also because transgender people meet all of the traditional indicia of "suspectness" and thus constitute at least a quasi-suspect class. *See Grimm v. Gloucester Cnty. Sch. Bd.*, No. 19-1952, 2020 WL 5034430, at \*14–18 (4th Cir.), *as amended* (Aug. 28, 2020).

Under heightened scrutiny, the Board's policy is not substantially related to its important interest in protecting students' privacy in school bathrooms. *Id.* at \*18. The positive experiences shared by school districts nationwide that have allowed transgender students to use the bathrooms matching their gender identities, as well as Grimm's prior use of the boys' bathrooms for seven weeks without incident, demonstrate that the Board's privacy-related concerns are based on unfounded and irrational fears—similar to those used to justify the racial segregation of public bathrooms in the past. *Id.* at \*19; *id.* at \*30 (Wynn, J., concurring). If anything, the enforcement of the Board's bathroom policy would actually cause the very privacy violations that it allegedly seeks to prevent: if individuals like Grimm, who physically appears as male in every way but his genitals, were to use the girls' bathrooms, female students would suffer "a similar, if not greater, intrusion on bodily privacy than that the Board ascribes to its male students." *Id.* at \*28 (Wynn, J., concurring). Moreover, the events leading to the adoption of the challenged policy evince that the Board was motivated by an unlawful transphobic motive. *Id.* at \*20 (majority opinion). For these

reasons, the Board's policy violated Grimm's Equal Protection rights. And likewise, the Board's refusal to update Grimm's school records to accurately reflect his gender is not substantially related to its important interest in maintaining accurate records, and thus is unconstitutional. *Id.*

The Board's bathroom policy and its refusal to update Grimm's records also violated Title IX. *See id.* at \*21. After the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), holding that discrimination against a transgender person is necessarily a form of sex-based discrimination, there is no question that the Board's policy prohibiting Grimm from using the boys' bathrooms discriminated against him on the basis of sex. *Grimm*, 2020 WL 5034430, at \*21. In the Title IX context, unlawful discrimination means treating an individual worse than other similarly situated persons. *Bostock*, 140 S. Ct. at 1740 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)). "Grimm was treated worse than students with whom he was similarly situated because he alone could not use the restroom corresponding with his gender. Unlike the other boys, he had to use either the girls restroom or a single-stall option. In that sense, he was treated worse than similarly situated students." *Grimm*, 2020 WL 5034430, at \*23. This discrimination caused significant physical, mental, emotional, and social harm to Grimm, who developed painful urinary tract infections as a result of bathroom avoidance and also suffered from suicidal thoughts. *Id.* at \*22. Therefore, the Board's bathroom policy clearly violated Title IX, as did its refusal to update Grimm's school records. *Id.* at \*24.

Notably, Grimm's Title IX claim did not challenge the Board's maintenance of separate bathrooms for boys and girls. Instead, the unlawful discrimination at issue here is

9

the "separation of transgender students from their cisgender counterparts through a policy that ensures that transgender students may use *neither* male nor female bathrooms due to the incongruence between their gender identity and their sex-assigned-at-birth." *Id.* at *29 (Wynn, J., concurring) (emphasis in original). This type of segregation creates harmful stigma, just as the racial segregation of restrooms and schools imposed a badge of inferiority on Black children. *Id.*; *see also Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 494 (1954).

The rights guaranteed by our Constitution enshrine this country's most fundamental values and inviolable principles designed to protect individuals and minorities against majoritarian politics. This is especially true of the Fourteenth Amendment's promise of equal protection of the laws, which was adopted with the specific purpose of protecting minorities from majoritarian discrimination. The district court below delivered on this promise by holding that under our laws, the Board unlawfully discriminated against Grimm. That decision was correct, as this Court has held. Therefore, I join my colleagues Judge Niemeyer and Judge Floyd in denying rehearing en banc.